## THE PESHTIGO.

### WHITE and others *v.* THE PESHTIGO Co.

*(District Court, N. D. Illinois. July 5, 1885.)*

1. COLLISION—APPROACHING PROPELLERS—REV. ST. § 4233, RULE 19.
   When the two propellers B. and T. were approaching each other in such a way that the B. had the T. on her starboard side, *held*, that it was the duty of the B. to keep out of the way of T., and that the B. was responsible for a collision caused by a failure so to do, and requiring the T. to change her course.
2. SAME—BARGE IN TOW—FOG-HORNS.
   When, in a fog, a barge is in tow of a tug or steamer by a long line, a fog-horn or other signal should be sounded on the barge at regular intervals in

the same manner as if she were moving by the agency of her own sails, and when this precaution is omitted she will be chargeable with negligence, and responsible for its consequences.

3. SAME—RATE OF SPEED—FOG—CHICAGO HARBOR.

A steamer running at the rate of nine miles an hour in a dense fog in the vicinity of the entrance to Chicago harbor is guilty of negligence.

In Admiralty.

*Schuyler & Kremer,* for libelants.

*Jewett, Norton & Larned* and *W. H. Condon,* for respondents.

BLODGETT, J. This is a libel for damages sustained by a collision which occurred on the waters of Lake Michigan, seven or eight miles north of the entrance to Chicago harbor, about 2 o'clock in the morning of October 1, 1882, between the propeller Tempest, owned by the libelants, and the barge Peshtigo, in tow of the propeller Boscobel; both the Boscobel and the Peshtigo being owned by respondent. The commissioner found by this report that the collision was occasioned by negligence on the part of the Boscobel in requiring the Tempest to pass on her starboard side, and in handling her tow, and on the part of the Peshtigo in not giving the proper signals, and on the part of the Tempest in running at too high a rate of speed, and finds that each should pay one-third of the damages. Exceptions to the findings of the commissioner are taken by respondent.

The facts, as they appear from the proof, are that the Boscobel, with the barges Peshtigo and Advance in tow, was running nearly due north; the barges being towed astern of the Boscobel, the Peshtigo being next to the Boscobel, and the Advance astern of the Peshtigo. The Tempest was bound for Chicago. Her course was S. W. by S. Both steamers were sounding their fog-whistles at proper intervals, and seem each to have been aware of the proximity of the other. For some minutes before the collision they could not see each other, a dense fog having prevailed for some time, and they did not see each other until when from two to three hundred feet apart. About the time they sighted each other, the Boscobel sounded two blasts of her whistle as a signal or request for the Tempest to go to port and pass on the starboard side of the Boscobel. The Tempest complied with the request, put her wheel to starboard, and went off to port, appearing on the starboard side of the Boscobel, and it was not until the Tempest had passed opposite the stern of the Boscobel that the officer of the Tempest became aware that the Boscobel had a barge in tow. About this time the Boscobel put her own wheel to starboard and went off to port, and checked her headway so that her tow line fell slack. The Peshtigo, getting no signal to change her course and follow the Boscobel, did not do so, and the result was a collision in which the Tempest sustained the injuries complained of.

The proof shows that no fog-horn was sounded on the Peshtigo indicating her whereabouts to the Tempest, and that the only signals heard by the Tempest were the fog-signals and the request to pass on

the starboard of the Boscobel. The testimony in the case as to what was done on each vessel, and what each saw or heard of the other, is more than usually confused; but my own conclusion is that the Tempest, having no notice of the tow, only put her wheel over far enough to clear the Boscobel, intending as soon as she was clear to resume her former course and go under the stern of the Boscobel. When she saw the tow it was too late to avoid the collision.

The first fault, as it seems to me from the proof, was in the Boscobel in requiring the Tempest to pass her starboard to starboard, instead of port to port. The two propellers were approaching each other in such a way that the Boscobel had the Tempest on her own starboard side, hence it was the duty of the Boscobel to have kept out of the way of the Tempest, as is required by rule 19, § 4233, Rev. St., which she could have easily done by porting her own wheel and going to starboard so that she would have passed with her tow astern of the Tempest. But, instead of complying with this rule, the Boscobel required the Tempest to change her course; going off herself and slackening her speed so as to almost inevitably entangle the Tempest with the barges in tow. This fault on the part of the Boscobel tended to bring about the collision, because it placed the Tempest in an unexpected and unnecessary proximity to the barges. The fault of the Peshtigo was in not blowing fog-horns so as to indicate her position to the Tempest. Had this been done at the time the Tempest was signaled to pass the Boscobel on the starboard side, the Tempest would have had notice that she not only must pass the Boscobel on the starboard side, but also her tows, one of which was 500 and the other 1,000 feet astern, and she would naturally have kept her wheel hard a-starboard so as to have given the barges as wide a berth as possible.

While the courts have, in passing upon the duty of tugs in towing other vessels, said, in substance, that the tug and barges were to be considered as one vessel, yet there can be no doubt that when a barge is in tow of a tug or a steamer by a long line, a fog-horn or other signal should be sounded on the barge at regular intervals, in the same manner as if she were moving by the agency of her own sails. On a clear night the lights on the tug and on the barges would notify an approaching vessel that she was in the vicinity of a steamer with tows; but in a fog there must be some means by which the location of the barges can be indicated, and when this precaution is omitted, the craft guilty of such omission is chargeable with negligence and responsible for its consequences. The Tempest was running at the rate of about nine miles an hour, which, when the dense fog is considered, together with the fact that she was in the close vicinity of the entrance to the Chicago harbor, where she was bound to take notice that she might at any moment meet or overtake other vessels, was a dangerous rate of speed, which should deprive her of the right to claim full damages of the other parties, although they may have been in fault.

The exceptions to the commissioner's report are overruled, and a decree will be entered finding the Boscobel, the Peshtigo, and the Tempest in fault, and directing a division of the damages, each to pay one-third.