## THE KOMUK.

### THE CLARENCE.

#### (District Court, S. D. New York. February 2, 1903.)

**1. Collision—Steam Vessel and Barge in Tow—Want of Lookout and Failure to Observe Towing Lights.**

A steam lighter which was navigating New York Bay in the night without a lookout, and which attempted to pass close under the stern of a tug, although the latter carried lights indicating a tow astern, and in so doing came into collision with a barge in tow of the tug, *held* in fault for such collision.

**2. Same—Contributory Fault—Absence of Lights on Tow Required by Pilot Rules.**

When a barge injured in a collision in the night in New York Bay while in tow of a tug was not carrying the lights on the bow and stern required by rule 11 of the pilot rules, the burden rests upon her and the tug to prove that such violation of the rule did not contribute to the collision.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libelant.
Wilcox & Green, for the Clarence.
Hyland & Zabriskie, for the Komuk.

ADAMS, District Judge. On the 15th of November, 1901, about 5 o'clock P. M., a collision happened in the vicinity of Robbins Reef, Upper New York Bay, between the steam-lighter Clarence and the canal boat E. W. Griggs, which was in tow of the steam-tug Komuk on a hawser. The owner of the Griggs brought an action against both of the steam vessels for his damages.

The Griggs was taken in tow shortly before the collision at Stapleton, Staten Island, to be delivered at Pier 6, East River. The Clarence left Pier 11, North River, shortly before 5 o'clock bound for Bayonne, through the Kills. The Komuk claims that as she was approaching the bell buoy, near Robbins Reef, the Clarence was well off on the Komuk's starboard bow, showing her red and green lights, and that shortly afterwards the red light was shut out, leaving the green light only visible, indicating a change of course on the Clarence's part

to the eastward, which, if continued, would have enabled the vessels to pass starboard to starboard, at a considerable distance apart. The Clarence claims, that when about a quarter of a mile to the eastward of Robbins Reef Light, the Komuk was on the Clarence's port bow about a half a mile away, to the southeast, showing her red light, so that if the courses continued they would have passed port to port, and that she shortly afterwards changed so as to open her green light. These claims are irreconcilable. The weight of the testimony is in favor of the Komuk's contention and I find that the Clarence approached the tow from the east and ran into the Griggs, on the starboard side, when the latter was a little north of the bell buoy, the Clarence having apparently changed her course to the westward to go under the Komuk's stern and reach her destination, without regard to the tow. The Clarence had no lookout and apparently did not see the Griggs until in the jaws of the collision, though the Komuk's lights indicated that she had a tow on a hawser. When the Clarence did see the tow, she attempted to arrest her headway by reversing but her efforts were unavailing. I find that the collision was mainly caused by her want of lookout, and in attempting to go closely under the Komuk's stern, without regard to her tow.

It is urged that the Komuk is in fault because she did not blow any signals until the vessels were in close proximity. It is true that she failed to give signals but she was observed by the Clarence when more than a mile away, so that it appears the lack of signals did not in any way contribute to the collision with the barge, even if the situation demanded them.

A more serious charge against the Komuk and the Griggs is, that the latter did not display lights according to Rule 11 of the Pilot Rules, which provides:

"Barges and canal boats, when being towed by steam vessels on the waters of the Hudson River and its tributaries from Troy to Sandy Hook, the East River, and Long Island Sound (and the waters entering thereon, and to the Atlantic Ocean), to and including Narragansett Bay, R. I., and tributaries and Lake Champlain, shall carry lights as follows:

"Barges and canal boats being towed astern of steam vessels, when towing simply or what is known as tandem towing, shall each carry a white light on the bow and a white light on the stern."

The Griggs concededly did not comply with this rule but only exhibited one light, which was placed on her cabin. It is urged in her behalf that the neglect did not in any way contribute to the collision and the testimony of the master of the Clarence that he saw the light is relied upon to establish the contention. In considering the question of the Clarence's fault, I have entirely disregarded the testimony of this witness as being utterly unreliable and certainly can not accept it as establishing this claim. It appears that he was not on deck until immediately prior to the collision and that the navigation during his absence was in charge of an unlicensed man, who was steering the Clarence and failed to see the canal boat at all. In the absence of proper lights, it was incumbent upon the Komuk and the Griggs to show that the neglect to comply with the rule did not contribute to the collision. This they have failed to do, and they must bear a part of the loss. They will be considered as one vessel and contribute to-

gether one-half. The remaining half will be borne by the Clarence. The Lyndhurst (D. C.) 92 Fed. 681; The Nettie L. Tice (D. C.) 110 Fed. 461.

Decree against the Clarence for one-half of the damages and against the Komuk for one-quarter, with an order of reference.