NILS P. NELSON, Plaintiff, *v.* JAMES V. ALLIS, Defendant.

City Court of New York, Trial Term, Bronx County, June 29, 1943.

*Benjamin Eigg* and *Gustave G. Rosenberg* for plaintiff.

*Maurice J. Fleischmann* for defendant.

SCHACKNO, J. This is a common-law action to recover damages for personal injuries.

On July 19, 1941, between the hours of noon and 1 P. M., plaintiff was in his gas boat, which was about thirty feet long, anchored about 350 feet off Breezy Point, Rockaway, Queens County; defendant at the same time was in his gas boat, which was about twenty-five feet long, anchored about 100 feet away from the boat of the plaintiff; while plaintiff was standing in his boat, he noticed the defendant's boat about 50 feet away drifting; he called to him to start the engine, but for some reason not explained by the defendant, the engine did not turn over; defendant's boat continued to drift until it collided with the plaintiff's boat, resulting in plaintiff's receiving the injuries for which he seeks to recover damages.

In admiralty, the party who has been wronged by a vessel has his right of action against the vessel *in rem*, or against the vessel and its owner *in personam*. (*Thompson Nav. Co.* v. *City of Chicago*, 79 F. 984; *Henderson* v. *City of Cleveland*, 93 F. 844.) Plaintiff brings this action against the owner *in personam*.

A prudent person in the exercise of due care would have tested the engine of his boat before he started out; this defendant failed to do; had he done so, he might have learned the reason why the engine would not turn over; he offered no evidence in explanation thereof; defendant's boat also had a steering apparatus and a boat pole; he made no use of either; the conclusion is inescapable that the anchor of the defendant's boat was not of sufficient weight to hold his boat or that his anchor chain or rope was not of a sufficient length; his attempt to attribute the drifting to a sudden squall and his claim that it was an unavoidable accident are not borne out by the evidence; both boats were in the same waters and at the same time, less than 100 feet away from each other; it is singular that the anchor of the plaintiff's boat held and that his boat did not drift. Had defendant exercised ordinary care the collision could have been prevented.

The consequences of defendant's neglect result in faults being properly chargeable to him and render him liable for his negligence; it would be a strange principle of law to say that a master of a vessel is not to be charged with responsibility for colliding with another vessel, when he had a sufficient length of time prior to the collision to have avoided it.

It is clear from the testimony that there was no fault on the part of the plaintiff and that the collision could have been prevented by the defendant had he exercised ordinary care and maritime skill. The probabilities all point to fault on the part of the defendant as the proximate cause of the collision.

It is necessary to say merely a word respecting the remaining argument made on behalf of the defendant as to the contributory negligence on the part of the plaintiff. He contends that plaintiff might have avoided or, at least, greatly lessened the seriousness of the collision, by not standing in the prow of his boat with his thumbs outside the rail, or by raising the anchor when the boat of the defendant was seen bearing down upon him. It is true that it is the duty of a vessel at anchor to adopt such means to avoid a threatened collision as can be taken without extraordinary risk. Plaintiff had no reason to believe that the engine of the boat of the defendant would not turn; he had every reason to believe the contrary; what defendant seeks to exact is an unwarranted standard of vigilance and a knowledge on the part of the plaintiff as to the condition of the engine of the defendant's boat. Moreover, in all probability, had plaintiff attempted to weigh his anchor, he still would not have had time to accomplish anything. The presumption is that the defendant's boat was at fault. (*The Oregon,* 158 U. S. 186; *Henderson* v. *City of Cleveland,* 93 F. 844; *The Minnie,* 87 F. 780.)

'' Where fault on the part of one vessel is established by uncontradicted testimony, and such fault is, of itself, sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel. There is some presumption at least adverse to its claim, and any reasonable doubt with regard to the propriety of the conduct of such other vessel should be resolved in its favor.'' (*The City of New York,* 147 U. S. 72, 85; *The Minnie,* 100 F. 128, 134.) This rule, sometimes known as the '' major and minor fault rule,'' is discussed and applied in *General Seafoods Corp.* v. *J. S. Packard Dredging Co.* (120 F. 2d 117).

There remains the question of damages. Plaintiff was seriously injured; he was admitted to the Coney Island Hospital, via its ambulance, on July 19, 1941, and remained there until July 28, 1941; the diagnosis, subsequently confirmed by an X-ray examination, was a compound fracture of the proximal phalanx, left thumb; subsequent to July 28, 1941, and until October 7, 1941, plaintiff attended and received treatment at the clinic of that institution on fourteen different days; the court observed the injured member; the injury is a serious one; the hospital charges are $121.95. Plaintiff is entitled to be reasonably compensated for his injuries, for the accompanying pain and suffering and for the hospital charges incurred by him. There will be judgment in his favor for $2,500. Ten days' stay of execution.